NOTICE
Decision filed 07/01/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 250038-U

NO. 5-25-0038

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Douglas County. |
| | ) | |
| v. | ) | No. 24-CM-29 |
| | ) | |
| FRANK A. HERMANSEN, | ) | Honorable |
| | ) | Katherine Demira Watson, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE HACKETT delivered the judgment of the court.
Justices Barberis and Boie concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The defendant's conviction for resisting or obstructing a peace officer is reversed because the indictment was fatally defective.

¶ 2    Following a jury trial, the defendant, Frank A. Hermansen, was convicted of resisting or obstructing a peace officer (720 ILCS 5/31-1 (West 2024)). Thereafter, the circuit court of Douglas County sentenced him to 12 months' probation. The defendant appeals, arguing that (1) his conviction should be reversed due to defects in the State's charging instrument; (2) the trial court committed plain error by failing to instruct the jury as to the law in effect at the time of the offense, or alternatively, defense counsel rendered ineffective assistance for not raising the issue in the trial court; (3) the trial court abused its discretion in denying the jury's request for definitions of

1

"resisting" and "obstructing"; and (4) the cumulative effect of the errors deprived the defendant of a fair trial. For the reasons that follow, we reverse the circuit court's judgment.

¶ 3                                    I. BACKGROUND

¶ 4     On April 24, 2024, the State charged the defendant with resisting or obstructing a peace officer (*id.*). Specifically, the information stated as follows:

> "That on April 23, 2024, in Douglas County, [the defendant], committed the offense of RESISTING OR OBSTRUCTING A PEACE OFFICER, in that said defendant knowingly resisted or obstructed the performance of Charles Abarbanel, Arcola Police officer, of an authorized act within his official capacity, knowing Charles Abarbanel to be a peace officer engaged in the execution of his official duties, in that said defendant refused to obey the officer's verbal commands, pulled away from the officer, and continued to actively physically resist the officer's attempts to control the defendant, in violation of 720 ILCS 5/31-1."

The defendant did not file a pretrial motion challenging the information or a bill of particulars.

¶ 5     On November 12, 2024, the jury trial was held, and the following evidence was presented. Charles Abarbanel, a police officer at the Arcola Police Department, testified that on April 23, 2024, at 1:27 a.m., he observed a Chrysler van turning into and out of a drive that led to a field and then continuing in its original direction of travel. When Officer Abarbanel ran the license plate, he learned that the defendant was the registered owner, and a warrant had been issued for the defendant's arrest. Officer Abarbanel followed the van into a gas station parking lot. Officer Abarbanel approached the defendant and asked for identification, but the defendant did not provide any identification. Instead, the defendant told Officer Abarbanel to refer to the name on the

2

defendant's shirt. Officer Abarbanel initially did not recognize the defendant, but after speaking with the defendant, Officer Abarbanel recognized the defendant from a prior contact.

¶ 6    During the course of the traffic stop, Officer Abarbanel attempted to have the defendant exit the vehicle, so that Officer Abarbanel could place the defendant under arrest on the warrant. However, the defendant did not comply with Officer Abarbanel's multiple requests to exit the vehicle. At some point during the encounter, Officer Abarbanel opened the driver's side door and attempted to remove the defendant from the vehicle by grabbing the defendant's left wrist. Officer Abarbanel attempted to also grab the defendant's left forearm, but the defendant "yanked his left arm back in a very aggressive manner." Officer Abarbanel then radioed the officers who were already on their way to the scene to let them know that the defendant was not exiting the vehicle and that he needed a faster response.

¶ 7    Eventually, two other officers arrived, and with their assistance, the defendant was placed into custody. After the defendant exited the vehicle, he turned his back to Officer Abarbanel and attempted to reach inside the vehicle for something. Officer Abarbanel did not know what the defendant was reaching for at the time. Officer Abarbanel then pulled the defendant away from the vehicle. Officer Abarbanel testified that the traffic stop was prolonged because the defendant repeatedly refused to follow Officer Abarbanel's verbal commands. The encounter with the defendant was recorded by the dash-mounted camera in Officer Abarbanel's squad car, and the recording was played for the jury.

¶ 8    In the video, Officer Abarbanel approached the defendant's van, and the defendant asked whether he had committed any crime and accused Officer Abarbanel of being nosy and following him. Officer Abarbanel responded that he was conducting a *Terry* stop (*Terry v. Ohio*, 392 U.S. 1 (1968)) and asked whether the defendant knew what a *Terry* stop was. The defendant said that he

3

did not care what a *Terry* stop was and that he was just lost and had made a wrong turn. Officer Abarbanel asked for the defendant's driver's license, and the defendant refused to give his license to Officer Abarbanel. Officer Abarbanel told the defendant that he was required to provide his driver's license, and the defendant responded that he did not care and to arrest him and again asked whether he had committed a crime. When Officer Abarbanel asked the defendant whether he was Frank, the defendant responded by asking if Officer Abarbanel was stupid and noting that his name was on his shirt. Officer Abarbanel then returned to his squad car and confirmed that there was a warrant for the defendant's arrest. Officer Abarbanel also informed dispatch that the defendant was refusing to give any identification, and he would be surprised if the defendant exited the vehicle.

¶ 9    Officer Abarbanel then returned to the defendant's vehicle and told the defendant to get out of the vehicle because of the warrant. The defendant responded that he did not believe that there was a warrant, but he needed to call his wife because his son was in the backseat. The defendant again started questioning why he was pulled over, and Officer Abarbanel told him to get out of the vehicle and that he could call his wife once he was out of the car. The defendant asked what Officer Abarbanel was going to do when he got out of the car. Officer Abarbanel responded that he was just going to put the defendant in handcuffs. The defendant again noted that his son was in the vehicle. Officer Abarbanel responded that he did not want to handcuff the defendant in front of the defendant's son and that the defendant could call his wife once he got out of the car. The defendant asked what the warrant was for and stated that he should not have a warrant, and Officer Abarbanel noted that it was for disorderly conduct. Officer Abarbanel indicated that he could explain more about the warrant once they were outside the son's presence, but the defendant noted that his son was asleep. Officer Abarbanel then said that the defendant

4

could call his wife but told the defendant to put the phone on speaker, so that the defendant could talk to her while Officer Abarbanel handcuffed him.

¶ 10    The defendant then noted that he would do what Officer Abarbanel asked him to, but he wanted to "be slow about this." Officer Abarbanel responded that he was trying to be slow about it, but the defendant was making it difficult. The defendant noted that he would be 100% cooperative but again started arguing about why he was pulled over. Officer Abarbanel then told the defendant to get out of the car and opened the driver's side door. The defendant responded that he wanted to call his wife, and Officer Abarbanel again gave the defendant permission to call his wife and put the phone on speaker, so Officer Abarbanel could arrest him. The defendant then noted that he was going to call his wife, that he was recording the interaction with Officer Abarbanel, and that he needed to start another recording on a different device while he called his wife. Officer Abarbanel radioed dispatch that the defendant was refusing to get out of the car, and the defendant accused Officer Abarbanel of escalating the situation and of needing to calm down. The defendant then called Officer Abarbanel a derogatory name. Officer Abarbanel responded, "Screw your phone," and reached inside the vehicle toward the defendant. Officer Abarbanel then backed out of the vehicle and radioed dispatch that the defendant had his son in the backseat and was trying to resist arrest.

¶ 11    The defendant called his wife and told her to pick up their son. Once the defendant was off the phone, Officer Abarbanel stated that he wanted to put handcuffs on the defendant. The defendant asked whether it could wait and whether they could talk about it, and Officer Abarbanel responded that it could not wait and that they could talk about it afterwards. The defendant then stated that if he had a warrant, that was fine, but he did not know about it. When Officer Abarbanel noted that the defendant had already pulled back from him, the defendant responded that he

5

believed that Officer Abarbanel was going to tase him. The defendant asked for permission to start recording again, and Officer Abarbanel indicated that was fine and to set it up so that he could handcuff the defendant. The defendant responded that he would rather not be handcuffed in front of his child and asked for five minutes. Officer Abarbanel said that the defendant could not have more time and that another deputy was already on the way.

¶ 12    The defendant started exiting the vehicle but then sat back down and reached for his shoes inside the vehicle. As the defendant was reaching back inside the vehicle, Officer Abarbanel stated, "Look, no, no, I don't need you reaching—," but then he noted that it was fine when the defendant put a hand in the air. The defendant then exited the vehicle and put on his shoes as the other deputy approached. However, the defendant continued arguing about why he was pulled over. Officer Abarbanel told the defendant to turn around and put his hands behind his back, but the defendant again reached back inside the vehicle, saying that he was getting his phone. Officer Abarbanel and the other deputy grabbed the defendant, pulled him out of the vehicle, and handcuffed him.

¶ 13    After playing the video, defense counsel cross-examined Officer Abarbanel. During cross-examination, Officer Abarbanel acknowledged that he initially did not mention the arrest warrant or say whether a crime had been committed. Officer Abarbanel also acknowledged that the defendant "stepped out" of the vehicle "under his own power." During the encounter, the defendant had reached into the vehicle to grab his shoes and then his phone. There were no weapons in the vehicle. The State rested.

¶ 14    The defendant then testified that before he was stopped by Officer Abarbanel, he was driving to a hotel. However, it was dark, and he ended up turning onto the wrong road. When he realized that he had turned onto the wrong road, he backed up and continued traveling in his original direction. He then noticed a police officer following him, and he went to a nearby gas

6

station. He acknowledged that he was frustrated and agitated at the officer following him. The defendant explained that, two days prior to this incident, officers ran his name, and there was no arrest warrant. The defendant explained that he initially went back and forth with Officer Abarbanel because Officer Abarbanel would not tell him what crime he had committed or that there was a warrant for his arrest.

¶ 15    Before he learned that an arrest warrant was issued, he did not believe that Officer Abarbanel had a legitimate reason for stopping him. Initially, the defendant did not believe that there was an arrest warrant because he had not done anything wrong between when the other officers ran his name and when Officer Abarbanel detained him. However, after he learned that there was a warrant, he was compliant, although he wanted to take things slow because he did not want the interaction to escalate. He had no issue with being arrested, but he wanted to call his wife to pick up their child. He was not resisting arrest, and he did not intend to pull away from Officer Abarbanel. Instead, he was reaching inside the vehicle for his phone and his shoes. He never had to be physically removed from the vehicle and, when the second officer arrived, he was already out of the vehicle. He noted that there was no wrestling or "tussling." Although he admitted initially being rude to Officer Abarbanel, he explained that he never thought that he was resisting or obstructing Officer Abarbanel from taking him into custody.

¶ 16    On cross-examination, the defendant testified that there was a miscommunication with Officer Abarbanel because Officer Abarbanel initially said that the defendant could call his wife and get his shoes, but then Officer Abarbanel changed his mind. The defendant was reaching for his phone and his shoes when he pulled away from Officer Abarbanel, so it was a "timing issue." The defense then rested.

7

¶ 17    During the jury instruction conference, defense counsel requested that instructions defining "obstruction" and "resist" be given to the jury. Specifically, counsel submitted the following proposed non-Illinois Pattern Jury Instructions (non-IPI):

> "[DEFINITION OF OBSTRUCTION:] Obstruction is physical or verbal conduct that interposes an obstacle that impedes or hinders a peace officer and is relevant to the performance of the officer's authorized duties.
>
> Mere argument, even if foul language is used, is not, by itself, obstruction."
>
> "[DEFINITION OF RESIST:] Resist means to withstand the force or effect of, or exert oneself to counteract or defeat."

Defense counsel indicated that the proposed instructions were based on the definitions of the terms provided by the Illinois Supreme Court in *People v. Baskerville*, 2012 IL 111056, ¶¶ 19, 25, 29. Counsel argued that if the definitions were not provided, there was a risk that the jury would not consider the entire exchange and instead convict the defendant merely based on the fact that he "swore at that nice police officer." In addition, counsel argued that for resisting arrest, the defendant's conduct must meet the level of "force exerted to defeat."

¶ 18    In response, the State contended that Illinois Pattern Jury Instructions, Criminal, No. 22.14 (approved May 4, 2018) (hereinafter IPI Criminal 22.14), accurately conveyed the relevant law with regard to the charge of resisting or obstructing a peace officer. The State also argued that the definitions would confuse the jury and that resisting and obstruction were ordinary terms used in daily life. After hearing counsels' arguments, the trial court denied the defendant's request for the non-IPIs. In support of its decision, the trial court noted that the purpose of instructing the jury was to provide the correct legal principles applicable to the evidence and that where an Illinois Pattern Jury Instruction (IPI) applied, it should be used unless the trial court determined that it did

not accurately state the law. The trial court determined that the evidence and arguments presented at the trial detailed the defendant's obstructive conduct and that the jury was aware of what conduct was alleged to have supported the obstructing or resisting charge. Thus, the trial court found that no modified instruction was needed for the jury to reach its decision.

¶ 19 The jury was instructed as follows with regard to the charge of resisting or obstructing a peace officer. First, the jury was given Illinois Pattern Jury Instructions, Criminal, No. 22.13 (approved May 4, 2018), which stated as follows: "A person commits the offense of resisting or obstructing a peace officer when he knowingly resists or obstructs the performance of any authorized act within the official capacity of one known to him to be a peace officer." In addition, the jury was given IPI Criminal 22.14, which stated as follows:

"To sustain the charge of resisting or obstructing a peace officer, the State must prove the following propositions:

*First proposition*: That Charles Abarbanel was a peace officer; and

*Second proposition*: That the defendant knew Charles Abarbanel was a peace officer; and

*Third proposition*: That the defendant knowingly resisted or obstructed the performance by Charles Abarbanel of an authorized act within his official capacity.

If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.

If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty."

9

¶ 20    During jury deliberations, the jury sent a note to the trial judge with the following inquiries: (1) "What is a *Terry* stop and is it a legal reason?" (2) "What constitutes/definition of obstructing and resisting?" and (3) "Can an officer ask for I.D. without giving a reason for the violation?" For the first question, the parties and the trial court agreed to the following response: "[A] *Terry* stop is a legal term that is not at issue in this case."

¶ 21    For the second question, defense counsel noted that he had anticipated that the jury would be confused as to the definitions of obstructing and resisting. Counsel argued that other terms, such as peace officer and knowingly, were defined for the jury and that obstructing and resisting should also be defined, especially as those terms had been litigated in the appellate courts and had been defined by the supreme court. Counsel argued that refusing to provide legal definitions that had been accepted by the courts was tantamount to misleading the jury and inviting a conviction.

¶ 22    In response, the State noted that there were many terms used in the law that were not defined in the IPIs. The State argued that these two terms should not be defined, and that it should be left to the jury's common sense to determine what those terms meant. The State argued that the jury should define the terms by considering the ordinary way those terms were used in society, as well as the jury's own observations and life experiences. The State further argued that it was not the time to "throw in lengthy legalese in the middle of a jury deliberation" on an issue that was already denied in the jury instruction conference. After hearing argument, the trial court rejected defense counsel's request to define the terms. In making this decision, the trial court explained that one of the most notoriously undefined legal terms was reasonable doubt and that resisting or obstructing had not been defined in the IPIs. The trial court noted that it had denied defense counsel's prior request to provide those definitions for reasons previously stated. The trial court then indicated that it would answer the inquiry as follows: "[Y]ou should use your own

observations and experience in life and review the instruction which begins, 'to sustain the charge of resisting or obstructing a peace officer, the State must prove the following propositions.' "

¶ 23    For the third question about an officer asking for identification, the trial court provided the following answer: "You have the instructions of law that apply in this case. You should refer to them when deciding this case." Thereafter, the jury found the defendant guilty of resisting or obstructing a peace officer.

¶ 24    On December 20, 2024, the defendant filed a motion for acquittal or, in the alternative, motion for a new trial, arguing that the trial court abused its discretion by declining to give the jury his proposed non-IPIs defining "resist" and "obstruction." The defendant argued that the trial court exacerbated the error when, during jury deliberations, the jury asked for the definitions of those terms, but the trial court refused to give them. On January 15, 2025, the trial court held the sentencing hearing, at which the trial court addressed the defendant's posttrial motion. After hearing counsels' arguments, the trial court denied the defendant's motion. The trial court then sentenced the defendant to 12 months of probation. On January 21, 2025, the defendant filed a timely notice of appeal.

¶ 25                                II. ANALYSIS

¶ 26    The defendant contends that his conviction should be reversed due to defects in the State's charging instrument. Specifically, he argues that the information omitted a material element of the charged offense, charged multiple vague acts, and failed to describe the authorized act that he was alleged to have been resisting and obstructing. Also, the defendant argues that the trial court committed plain error in failing to instruct the jury as to the law in effect at the time of the offense, or alternatively, defense counsel rendered ineffective assistance for not raising the issue in the trial court. Further, the defendant contends that the trial court abused its discretion in denying the jury's

11

request for definitions of "resisting" and "obstructing." As we agree with the defendant that the State's information was fatally defective, and thus requires reversal, we need not address the remaining arguments raised in this appeal.

¶ 27 A criminal defendant has a fundamental right to be informed of the nature and cause of criminal accusations made against him. *People v. Espinoza*, 2015 IL 118218, ¶ 15; see U.S. Const., amend. VI; Ill. Const. 1970, art. I, § 8. In Illinois, this right is implemented by section 111-3 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/111-3 (West 2022)), which sets forth specific pleading requirements for a criminal charge. *People v. Carey*, 2018 IL 121371, ¶ 20. In relevant part, section 111-3(a)(3) of the Code requires any criminal charge to set forth the nature and elements of the offense charged. 725 ILCS 5/111-3(a)(3) (West 2022).

¶ 28 The standard of review when there are deviations from the section 111-3 requirements depends on the stage of proceedings in which the defendant first challenges the charge. *People v. Thingvold*, 145 Ill. 2d 441, 448 (1991). When the sufficiency of the indictment or information is challenged before trial, the charging instrument must strictly comply with the pleading requirements of section 111-3(a). *Carey*, 2018 IL 121371, ¶ 21. However, when an indictment is challenged for the first time on appeal, as in the present case, the standard is more liberal. *People v. DiLorenzo*, 169 Ill. 2d 318, 322 (1996). In such a case, an information is sufficient if it apprises the accused of the precise offense charged with sufficient specificity to allow the defendant to (1) prepare his defense and (2) plead a resulting conviction as a bar to future prosecution arising out of the same conduct. *Carey*, 2018 IL 121371, ¶ 22. In other words, a defendant challenging the validity of a charging instrument must establish prejudice in preparing his defense or in the invocation of double jeopardy. *People v. Smith*, 2012 IL App (4th) 100901, ¶ 104. The sufficiency of a charging instrument is reviewed *de novo*. *Espinoza*, 2015 IL 118218, ¶ 15.

¶ 29    In the present case, the defendant argues that the information was defective because it was based on a version of the statute that was not in effect on the day of the incident and thus failed to set forth all of the elements of resisting arrest. The defendant also argues that the information was defective because it charged him with two distinct offenses (resisting and obstructing) in a single count without setting forth sufficient allegations to provide him with notice as to under which offense the State was proceeding. The defendant argues that he was prejudiced by the defective charging instrument because, by charging him with an offense using outdated statutory language, the State forced him to answer to a law that was technically no longer in existence. In addition, the defendant contends that the State's imprecise charging document made it impossible to determine for which offense he was found guilty, which exposed him to double jeopardy concerns.

¶ 30    In response, the State contends that although section 31-1(a)(1) of the Criminal Code of 2012 (720 ILCS 5/31-1(a) (West 2024)) codified resisting arrest as a distinct offense, it left intact the substance of the prior enactment regarding the offense of obstructing a peace officer. The State also contends that the information charged the defendant with obstructing, rather than resisting. The State argues that the terms "resisting" and "resisted" in the information were mere surplusage and could be stricken, as the indictment charged the elements essential to the obstructing offense. The State further argues that given that obstructing is broader than resisting, and can involve a wide range of physical acts, the preparation of the defendant's defense was not prejudiced by the inclusion of the above terms in the information. The State contends that the information was specific enough to bar future prosecution for the charged conduct.

¶ 31    As previously noted, the information stated as follows:

    "That on April 23, 2024, in Douglas County, [the defendant], committed the offense

    of RESISTING OR OBSTRUCTING A PEACE OFFICER, in that said defendant

13

knowingly resisted or obstructed the performance of Charles Abarbanel, Arcola Police officer, of an authorized act within his official capacity, knowing Charles Abarbanel to be a peace officer engaged in the execution of his official duties, in that said defendant refused to obey the officer's verbal commands, pulled away from the officer, and continued to actively physically resist the officer's attempts to control the defendant, in violation of 720 ILCS 5/31-1."

¶ 32    The defendant and the State agree that the language contained in the information tracked a version of the statute that was no longer in effect on the date that the incident occurred (April 23, 2024). See 720 ILCS 5/31-1(a) (West 2020). Specifically, the previous version of the statute defined the offense of resisting or obstructing a peace officer as follows: "A person who knowingly resists or obstructs the performance by one known to the person to be a peace officer, firefighter, or correctional institution employee of any authorized act within his or her official capacity commits a Class A misdemeanor." *Id.*

¶ 33    However, effective January 1, 2023, the statute defining the offenses of resisting or obstructing a peace officer was amended to state as follows:

> "(a) A person who knowingly:
>
>> (1) resists arrest, or
>>
>> (2) obstructs the performance by one known to the person to be a peace officer, firefighter, or correctional institution employee of any authorized act within his or her official capacity commits a Class A misdemeanor." 720 ILCS 5/31-1(a) (West 2024).

Thus, the amendment separated resisting and obstructing into separate subsections and changed "resists" to "resists arrest." In addition, subsection (d) was added, which stated as follows: "A

14

person shall not be subject to arrest for resisting arrest under this Section unless there is an underlying offense for which the person was initially subject to arrest." Therefore, in amending the statute, the legislature codified resisting arrest as an offense distinct from obstructing.

¶ 34    We agree with the State that the substance of the statute as amended was essentially the same as the previous version with regard to the offense of obstructing. However, we note that the defendant was charged in a single count of the State's information with "resisting or obstructing," which were two legally distinct offenses. A charging instrument is void when two or more distinct offenses are charged in a single count, and such a charging instrument is considered defective because it does not set forth the nature and elements of the charged offense with certainty. *People v. Panozzo*, 2022 IL App (3d) 190499, ¶ 43.

¶ 35    In making this decision, we disagree with the State's position that the information clearly charged the defendant with an obstructing offense, rather than resisting. In particular, we note that the information alleged that the defendant *pulled away* from the officer and continued to actively *physically resist* the officer's attempts to control the defendant, both actions which could support a resisting offense. Therefore, the information was not clear that the defendant was only charged with an obstructing offense. In addition, it was not clear from the trial court proceedings as to whether the State was proceeding under a theory of obstructing or resisting. During opening statements, the State specifically discussed the acts that would constitute resisting, and in closing statements, talked about how the defendant "physically resisted" the officer. Further, the jury instructions mentioned resisting and obstructing.

¶ 36    Moreover, assuming the defendant was charged with resisting, then the information failed to set forth all of the elements of that offense. As noted above, the statute as amended required the State to prove that the defendant had resisted an arrest, not just an authorized act by the peace

15

officer. Thus, in that case, the information failed to set forth all of the elements of the offense charged. A charge that fails to state the nature and elements of the offense charged constitutes a defect that implicates due process concerns, as it does not give the defendant notice of the charges against him. *People v. Billingsley*, 67 Ill. App. 2d 292, 300 (1966); *People v. Leach*, 3 Ill. App. 3d 389, 395 (1972).

¶ 37     Thus, we find that, in this case, the defective information did not properly apprise the defendant of the exact charge being brought against him, or set forth the elements of that charge, that would enable him to prepare a defense, which, if successful, would bar further prosecution of the same offense. In addition, the subsequent trial made it impossible to determine whether the jury found the defendant guilty of obstructing or resisting. Thus, we conclude that the information here was fatally defective and cannot support a conviction. Accordingly, the judgment entered on the verdict of the jury is reversed. See *Leach*, 3 Ill. App. 3d at 393 (when a conviction rests on a fatally defective complaint, we reverse without remand).

¶ 38                                III. CONCLUSION

¶ 39     For the reasons stated, the judgment of the circuit court of Douglas County is reversed.


¶ 40     Reversed.

16